KING, Circuit Judge,
dissenting:
I am unable to agree with my fellow panelists, and therefore write separately in dissent. As explained below, the “supplemental medical evidence” submitted by Mrs. Finney — consisting of Dr. Guarino’s report, two MRI reports, and Dr. Morten-son’s treatment notes — constitutes new and material evidence. Because Finney has shown good cause for failing to incorporate that new evidence in the record in the prior proceeding, I would vacate the judgment and have this matter remanded to the Commissioner under the sixth sentence of 42 U.S.C. § 405(g) (hereinafter “Sentence six”).
I.
Pursuant to Sentence six, a district court that is reviewing a denial of Social Security disability benefits should remand the proceeding to the Commissioner “upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.” The supplemental medical evidence that Finney submitted to the district court plainly qualifies as “new evidence” under Sentence six. None of the evidence in the record leading to the 2010 decision (the “prior proceeding”) is remotely comparable to the new evidence. Finney also readily satisfies the “good cause” requirement for a Sentence six remand, as the deadline for submitting evidence to the Commissioner had already expired when the new evidence came into existence.
Whether the new evidence is material to Finney’s Social Security benefits claim in the prior proceeding is a somewhat closer call. The district court, in ruling that Fin-ney’s new evidence was not material, reasoned that almost none of it related to the condition of Finney’s knees during the period adjudicated in the prior proceeding— that is, March 14, 2006, through December 14, 2010. Although Sentence six does not explicitly require that new evidence must relate to the period previously considered by the ALJ, such a requirement is implicit in the materiality prong. See Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir. 1991); see also Szubak v. Sec’y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir.1984) (explaining that, to warrant a Sentence six remand, the new evidence must “relate to the time period for which benefits were denied,” and not be merely probative “of a later-acquired disability or of the subsequent deterioration of [a] previously npn-disabling condition”).
The requirement that the new evidence be relevant to the claimant’s condition during the period adjudicated in the prior proceeding does not, however, mean that the new evidence must have been created during that period, or even — as the district court erroneously assumed — that the new evidence must expressly refer to the claimant’s condition during that period. Our recent decision in Bird v. Commissioner of Social Security is particularly instructive on that point. See 699 F.3d 337, 340-41 (4th Cir.2012). The ALJ in Bird denied the claimant’s application for disability insurance benefits (“DIB”), but failed to consider medical evidence postdating the claimant’s so-called “date last insured” (“DLI”). Id. at 342. We ruled that the ALJ’s failure to consider Bird’s post-DLI medical evidence was erroneous. Id.
*719 Our Bird decision rested on the commonsense principle that “[mjedical evaluations made after a claimant’s insured status has expired ... may be relevant to prove a disability arising before the claimant’s DLL” See 699 F.3d at 341. Evidence of disability that comes into existence after a claimant’s DLI may warrant an inference that the claimant became disabled after the DLI, but it could also justify the inference “of a possible earlier and progressive degeneration.” Id. at 340 (internal quotation marks omitted). Thus, as Judge Keenan explained in Bird, the ALJ’s duty to consider all relevant evidence includes the duty to give “retrospective consideration” to evidence created after a claimant’s DLI, “when the record is not so persuasive as to rule out any linkage of the final condition of the claimant with his earlier symptoms.” Id. (internal quotation marks omitted).
Although the procedural posture of this proceeding differs from Bird, our observations therein about retrospective relevance are applicable in this context. As explained in Bird, a DIB claimant must establish that she became disabled before her DLL See 699 F.3d at 340. The DLI thus delineates the end of the “relevant period” for Social Security proceedings where the claimant is seeking only DIB and her insured status expires before the ALJ issues a decision. See Zirnsak v. Colvin, 111 F.3d 607, 610 (3d Cir.2014). In matters such as this, the date of the ALJ’s decision, rather than the DLI, marks the end of the relevant period. Whatever event terminates the relevant period, the basic principle is the same: the relevance of a claimant’s medical records turns not on when those records were created, but on whether they are probative of the claimant’s condition during the relevant period.
A reasonable ALJ could readily infer that the new evidence reflects Finney’s condition not only in 2011 and 2012 (when that evidence was created), but also in 2010, and perhaps earlier. The three most significant pieces of new evidence — -the Guarino report, the September 2011 right knee MRI, and the notes from Finney’s right knee surgery — were all created within the year immediately following the 2010 decision. Indeed, the new evidence was generally created closer in time to the 2010 decision than other evidence in the record of the prior proceeding. Moreover, the new evidence fills significant evidentia-ry gaps in the administrative record. For example, the new evidence includes the first expert opinion by an examining or treating physician of Finney’s physical functional capacity, it includes the first MRI reports, and it includes the first expert statement from a treating orthopedic specialist regarding Finney’s knee problems. As the majority opinion all but concedes, the new evidence likely would have impacted the ALJ’s assessment of Fin-ney’s residual functional capacity (“RFC”). See ante at 716 (“Dr. Guarino’s 2011 examination notes suggest that Finney’s physical impairments were more functionally limiting than the first ALJ’s determination had reflected.”).
To its credit, the majority eschews the district court’s flawed reasoning regarding the retrospective relevance of Finney’s new evidence. Instead, the majority concludes that any change in Finney’s RFC to account for the new evidence would have no impact on the ALJ’s conclusion that she could yet perform her past relevant work as a sewing machine operator. Indeed, the majority emphasizes that even if the first ALJ had restricted Finney to “light” work, as did the second ALJ, such a restriction would not preclude Finney from working as a sewing machine operator. See ante at 716-17.
*720 But Finney’s new evidence could also have impacted her RFC in ways other than the light work restriction. The second ALJ — with the benefit of the new evidence — included several functional limitations in her assessment of Finney’s RFC that were not made in the first ALJ’s RFC assessment.' Of note, the second ALJ found, based on the new evidence, that Finney must be allowed to alternate between sitting and standing; could frequently, but not continuously, operate foot controls with her feet; and must “avoid concentrated exposure to vibrations and workplace hazards, such as operational control of moving machinery.” J.A. 117. In my view, there is a substantial possibility that those limitations would prevent any person from working full time as a sewing machine operator. Indeed, the second ALJ reached that very conclusion.* There is also a reasonable possibility that, given a more restrictive RFC assessment, Finney would have been found disabled at step five, under the Medical-Vocational Guidelines, see 20 C.F.R. pt. 404, subpt. P, app. 2, or based on the absence of a significant number of jobs accommodating her RFC.
Finally, the Commissioner’s contention that the new evidence is of “questionable” potential weight is simply an unsound reason for denying a Sentence six remand. See Br. of Appellee 19. A reviewing court, in assessing the materiality of new evidence, must take care not to assume “the role of the fact-finder” by “[assessing the probative value of conflicting evidence.” See Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir.2011). It is the duty of the ALJ, not a reviewing court, to find facts and resolve evidentiary conflicts in Social Security proceedings. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir.1996); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). Put simply, Sentence six does not create .an exception to that bedrock principle. Sentence six simply reinforces that principle, ensuring that reviewing courts do not weigh new evidence, but simply assess whether such evidence is material. In these circumstances, and consistent with the foregoing principles, the new evidence was material.
II.
In sum, a proper evaluation of Finney’s new evidence could well have led the first ALJ to materially modify her assessment of Finney’s RFC. It is therefore clear that — assessed de novo — the district court erred in ruling that the new evidence was not material. Because Finney has unquestionably shown good cause for not submitting the new evidence in the prior proceeding, the judgment should be vacated and the matter remanded to the Commissioner.
I respectfully dissent.

 Although it does not question the second ALJ’s ultimate conclusion that Finney could not do her past relevant work as a sewing machine operator, the majority criticizes the ALJ’s reasoning on that point as "somewhat perplexing.” See ante at 715 & n. 2. Whether, as the majority suggests, the second ALJ misstated Finney’s RFC as including only sedentary rather than light work is beside the point. The other limitations in Finney’s RFC, not its broad classification as "light” or "sedentary, ” are what rendered her unable to work as a sewing machine operator.